Case No. 14-1168, Flytenow, Inc. Petitioner v. Federal Aviation Administration Administrator. Mr. Riches for the petitioner, Ms. Foster for the respondent. Mr. Riches? Good morning, and may it please the court. I am Jonathan Riches on behalf of Flytenow, Inc. Petitioners. I'd like to reserve three minutes for rebuttal. In the order under review, the FAA has stopped pilots from doing what they have been doing since the beginning of general aviation, and that is sharing expenses with their passengers, simply because those pilots use the Internet to communicate. That's not correct. It's because they communicate, not because they use the Internet. Your Honor, that is correct, Your Honor. It is because they communicate, and it's because the means of communication that they selected in this… It wouldn't make any difference, as far as the FAA's argument is concerned, or their analysis, whether the pilots put up signs at the airport, or use the Internet, or just spread the word. We think that it would, and in fact, historically, the WARE interpretation, the FAA has told us that bulletin boards are perfectly permissible. The bulletin board of the college, that's the case you're talking about? Yes, Your Honor. Yeah. Was holding out to a very limited audience of peers, but in any event, that was a… I believe that was a regional office interpretation, am I right? No, Your Honor, that was the Levy. In the Levy interpretation, they said that the Internet communications were perfectly permissible. The Levy one? Levy, yes, Your Honor. Which was the Maryland office or something? That's correct. Okay. Can I just ask a question about really the first thing that came out of your mouth, which is that this is an order, but we're not really reviewing an order, right? We're reviewing what is a final agency action under the jurisdiction of 49 U.S.C. 46110. Well, the statute says an order, right? Your Honor, the… You're saying an order or final agency action. That's right, Your Honor. But how do we know that FlightNow couldn't seek further reconsideration or further, you know, a hearing or fact-finding, et cetera? I mean, I guess the problem that I have with this case, to be very candid, is that there's a lot of facts that we don't know, and all of these decisions seem to be very fact-bound. What we do know, Your Honor, is that the FAA has settled on a firm legal position for which there are legal consequences, namely the cessation of operations for our client. Was there no procedure within the FAA by which you could appeal, as it were, the letter ruling? No, Your Honor, and the reason that's the case is because enforcement action had not yet been taken against individual clients, although it was threatened, and that put our client, FlightNow, in the position of seeking pre-enforcement review from the FAA, and then 49 U.S.C. 46110 grants this court jurisdiction to review that final agency order. So there's not a way to get further review within the agency, you're saying, short of enforcement, short of an enforcement action? That's correct, Your Honor. So the only way that that would happen is, and we now know what the agency's stated position is, so that would require somebody willing to run afoul of agency regulations. So there's literally no way to seek relief apart from this court's jurisdiction under the relevant federal statute. But I guess we don't know. There have been lots of different factual scenarios that have been presented to the FAA, and some of them, like the college bulletin board, and then there was the one back in 2005. Well, I guess that was the Levy letter was in 2005. But I guess what I'm having trouble figuring out is what facts were important to the FAA in this instance in determining that FlightNow was holding out. Frankly, Your Honor, we're having trouble figuring out the same thing because the FAA hasn't said and won't say. What they have said is that FlightNow's operations, and we know all the relevant facts there, are impermissible. And what we do know is that that determined all rights and obligations with respect to FlightNow and its member pilots. Well, how can we review an order or a final agency action when we don't really understand the basis for the action? Well, we think that we do with respect to these particular petitioners. When FlightNow petitioned the FAA, they laid out all the relevant facts in terms of how their operations work. They laid out all relevant information in terms of the FAA-certified pilots that participate on the website. And it would be helpful, these are facts that are in your bailiwick, to point us to facts that FlightNow is not holding out to the general public. Because I think that's where, I think the Internet is, it's less about communication and more about the ability of any potential passenger to, any potential passenger to find the service. And that, you know, that does go a long way toward raising a concern about holding out. And you have some facts about how that's not, it's not completely open to anyone? Yes, Your Honor. And, in fact, I think the important point is we shouldn't even get to holding out. Holding out applies to Part 119 operations, which are commercial in nature, necessarily. Those are business operations. But they're trying to determine whether this is a commercial operation. And one way they do that is they look at the character of it and they say, well, gee, it looks like, you know, in their position, I know you differ, but their position is that there's compensation here. And because it's in this different context, it's not subject to the exception for cost sharing by private pilots. And so there is some pressure on holding out. So what's your, what's your best sort of facts and circumstances on why FlightNow is not holding out generally? I'd like to address that, Your Honor. But if we only get to holding out, if it's. Let's address that and then we can go around. Yes, Your Honor. For several reasons, for several reasons. FlightNow is an exclusive website. So it's not open to everybody. The FlightNow. To whom is it not open? I'm sorry, Your Honor? To whom is it not open? It's only open to pilots who are certified and fully trained and licensed by the FAA. Oh, I thought you meant on the passenger side, for normal passengers. Any person can apply to become a flight enthusiast on FlightNow. That doesn't necessarily mean that they will remain on the website if, for instance, there's evidence that they were a disruptive passenger or something like that. Well, that's like I can apply for Uber and I get the app. I mean, I have to take a step. But I guess presumably they could bar me if I'm, you know, abuse their drivers. But that's not much of a screen. Well, Your Honor, if you look at what the FAA has permitted, namely bulletin boards, neither is. I'm more interested in your pointing me to where in the record you show any meaningful restrictions. So you have to join. What else? Anything else? Yes, Your Honor. And importantly, for those who join, they don't have any discretion in terms of unlike Uber, they don't have any or unlike a charter service, those individuals don't have any discretion in terms of I'd like to go from point A to point B. All of that information is determined by the FAA certified pilot members. That's a pretty crucial distinction, particularly when we're talking about common carriers, which they very clearly are not under the definition of this court. But the Haberkorn interpretation from I think it's 2011, right, that's the person who said, well, what if I just want to post on Facebook that I'm making a flight from A to B and I want to see if any of my Facebook friends will, you know, want to tag along and share expenses. The FAA said that that may be holding out, right, even though that's, you know, their Facebook friends presumably aren't the general public, right? The FAA said may. They didn't say that it was. And we think we're this entire, we think the reason you never need to get to holding out. Under the definition of this court, in fact, under the FAA's own regulations, is there has to be a commercial enterprise. In this place, there is, in this circumstance, there is no commercial enterprise. These are pilots sharing expenses with their passengers. It would be, if this was a commercial enterprise, Your Honor, it would be the only commercial enterprise in the history of the world for which pursuing a profit was not possible because pilots are sharing expenses. They are not pursuing any kind of profit. Well, but the agency's position is that they are being compensated. And we think the agency is incorrect. I understand that, but that's, if we, the argument you're attacking is one that is a corollary of their premise that there's compensation involved there. Although, Your Honor, that argument that in order to even get to compensation, that presupposes that there's a commercial operation. That presupposes that Part 119 applies. But does, is FlightNow not a commercial entity? FlightNow Inc. is, Your Honor. And the pilots have to pay to be among the pilots that are able to list on FlightNow? The flight enthusiasts, Your Honor, not the pilots themselves, no. So the passengers. All FlightNow does, and it's an important point, is connect pilots willing to share expenses or interested in sharing expenses with passengers who are interested in joining in on that flight adventure. And the passengers pay, would pay FlightNow a fee for connecting the pilots and the passengers. So they don't pay passengers or potential passengers don't pay a membership fee like, you know, X dollars a month or X dollars a year to join? No, Your Honor. FlightNow only gets paid a commission once they are joined with a pilot and the flight takes place. That's correct, Your Honor. I think I heard you suggest that it was important to note that the, it was the pilots who determined the points A and B, not the passenger. Is that any different from a railroad? A railroad can go only from A to B, only where its tracks are. Why it matters, well, I guess what's different in the railroad context is that they're clearly a common carrier. They can't refuse passengers indiscriminately. Why it's important in this context is because the FAA has set out what's called the common purpose test for years, since the beginning of general aviation. And what that says is that if the pilot is determining the route, and both pilot and passenger have an independent reason for traveling there, then there is no compensation. And that's exactly what's happening here. Didn't they say it's no compensation or did they just say that it's an exception? Yeah. It's not that we are defining this to not be compensation. It's that it's an exception to the rule that prohibits compensation. I'm sorry, Your Honor. Those two different things? We think they've actually said both. We know, and this is at Petitioner's Addendum 2, that at least since 1964, and the FAA has reiterated this time and again, the FAA said one or more passengers contributing to the actual operating expenses of a flight is not considered the carriage of persons for compensation or hire. The FAA reiterated that in 1997. It's because they had previously set out that compensation is any receipt of consideration and then said, but we're going to make an exception. We're going to allow it. It's compensation, but we're going to allow it. Your Honor, I think they were much clearer than that. That might have been the FAA's position in 1963 in the proposed notice of rulemaking, but in the final rule, the FAA clearly said this wasn't compensation and reiterated that time and again. And then throughout the years, the FAA has set out the common purpose test to determine whether in fact something is or is not compensation, and if there's a common purpose, it clearly isn't. I just don't see how you think we can avoid dealing with holding out. What's the sequence here? Thank you, Your Honor. I think this Court never needs to reach holding out. Holding out only applies to Part 119 commercial operations. The agency has said you're engaged in or proposing Part 119 operations by reason of your holding out. Your Honor, this is the first time the agency has ever said that expense sharing under Part 91, not under Part 119, is actually compensation. In 60 years, this is the first time that the agency has ever deemed expense sharing a commercial operation. This is a radical departure. Well, I mean, it's not quite fair because there's technology now available to match people by the Internet, and so it's no surprise that there are opportunities for holding out that didn't previously exist, and the agency is trying to figure out how to respond to those. I agree entirely, Your Honor, with respect to commercial for-profit business operations that are properly licensed under 119. This is not a business. But that's the question. You're assuming the answer to the question that we have to answer, which is, are you a commercial enterprise? In fact, Your Honor, I think the FAA is assuming that answer. Here's where we know it. The FAA tells us expressly in the FARS, and this is at 14 CFR 1.1. So these pilots, according to the FAA, can be one of two commercial operators. They can be something like a charter operation or something like an air carrier, so Delta. We know because these are four- and six-passenger planes, we're not dealing with Delta and air carriers. So the most closely analogous operation that these could be are charter operations. But the FAA tells us in their regulations how do we determine compensation for charter operations, and what it says is this, 14 CFR 1.1. Where it is doubtful that an operation is for compensation or higher, the test applied is whether the carriage by air is merely incidental to the person's other business or is in itself a major enterprise for profit. But that's a separate question. I mean, there we're assuming that the pilots that are flying those flights are commercially licensed pilots. And here the question is, you know, it's the Airbnb question. It's like, are you operating a hotel or are you entertaining guests? And so what they say about charter seems to me a little orthogonal to the question that is before us. We believe it's a fundamental threshold question. Unlike Airbnb, these pilots can't pursue a profit. They're just sharing expenses, which has been permitted since the beginning of flight. Given the size of most people's mortgage, they're probably also not making a profit. They're getting some amount of cost sharing for the cost that they're paying for their property, maybe. I mean, so it's still attractive. It's still money. It still might be seen as, I mean, obviously the concern that they have is you're allowing the consuming public to think that because this is all packaged and open to strangers, that somebody else is making the determination about whether they trust these pilots. Whereas, you know, if you go to the billboard and somebody says, you know, hey, I'm a sophomore in such and such a dorm and I'm flying out to Minneapolis this weekend, does anybody want to come? The person accepting that offer is really evident to her that she's got to be doing the due diligence. And so, you know, there's some rationality behind that, and they're trying to understand whether you're making a loophole out of the private pilot system. I'm glad you brought that up. So the FAA has tried to fashion this new rule, which is the first time the FAA has ever fashioned this rule, which says that if you're friends with the pilot, sure, you can share expenses, regardless of if there's compensation or holding out or anything else. If you're strangers, then you can't. First of all, there is nothing in the governing regulation 61.113C that makes any friend stranger's distinction. The FAA, in pursuing this affinity requirement, directly undermines itself in its where interpretation, where they said that the bulletin boards are fine because they are the friend stranger's distinction. It makes no sense. Any stranger can walk by. They're trying to give some meaning to holding out. But here's the point, I think, Your Honor. What the FAA is trying to do and what they ought to do is ensure airline safety. The means that they've chosen, this friend stranger's distinction, is completely irrational to that end because a Part 119 certificate does nothing to ensure airline safety in terms of pilot qualifications. And I'll give you an example. A private pilot, a charter pilot, an airline pilot, Captain Sully, Neil Armstrong, could not share expenses on flight now, regardless of their extensive pilot training, because they're not a commercial operation and they're not operating under commercial rules. They're expense sharing under Part 91. And that's why the means chosen by the FAA simply is irrational to the ends of airline safety. Can you just give us your view on the extent to which we need to define common carrier consistent with a common law or whether that is a term that the agency has taken as a term of art for purposes of its governing scheme? Yes, Your Honor. I think that the court should maintain the definition of common carrier as clearly set out in the common law and by this court, namely that there has to be a commercial operation for which there clearly is not because there is no possibility for profit. And second, that there must be a willingness to take all comers without refusal, a fundamental distinction of common carriers. In this case, both pilots and passengers can accept flights for any reason or no reason at all, which clearly does not make them common carriers. Thank you. Sidney? I'm sorry, Ms. Foster. May it please the court, Sidney Foster for the government. Your Honor, the FAA reasonably concluded here that the FlightNow pilots who post flights on the FlightNow website are common carriers and thus require Part 119 certificates in order to conduct their operations. The common carrier analysis, I think there's no dispute about the central elements of that analysis. An individual needs to be holding out to the public or a segment of a public a willingness to transport persons or property from place to place. Can I ask an antecedent question, which is how do we know that this is final agency action? Do you agree that this is final agency action? Your Honor, we haven't made a final agency action argument in this case. We considered that, and we do think it's a very close question. That's not something that we have argued in this case, because we do think that the views that were offered in this order do represent the definitive agency views. But we do think that that is a close question. I mean, is there any procedure whereby FlightNow could say we want to present further facts to the agency about what we do and why we're not holding out or why we're not a common carrier? There's no procedure for seeking, say, reconsideration of this. This is kind of the end of the line for the procedure that we're seeking kind of a legal interpretation. That said, there's nothing stopping FlightNow from actually seeking another legal interpretation if they wanted to submit, for example, more facts to the agency or change kind of the facts that were submitted to the agency in this request for an interpretation. They could certainly do that, and then the agency would issue a new legal interpretation based on that new request. In the letter that's at issue, I don't really see that the agency grappled with holding out aspect with respect to these facts. How can I review this when I don't really see that the agency explained itself as to why there was a holding out here or why there'd be a holding out under these facts? I think I would respectfully disagree that the agency didn't grapple with the holding out. But I think if you look at JA62, there is a paragraph addressing holding out where the agency responded to the very limited arguments that the petitioner had made in the request for legal interpretation and explained that it did think that there was holding out here because holding out can be accomplished by any means which communicates to the public that a transportation service is indiscriminately available. And then the agency goes on and says, based on your description, the website is designed to attract a broad segment of the public interested in transportation by air. So the agency was looking at the facts that were presented to it, which were somewhat limited in nature to be sure, but the facts presented to it were that any member of the public can apply to become a member of the FlightNow website and then access the postings by FlightNow pilots, and therefore those postings by the FlightNow pilots are essentially accessible to any member of the public. Simply all they have to do is to apply for membership. That seems to be a fairly straightforward case of holding out. And the letter doesn't, I guess, explicitly, well, reference the Habercorn letter, but presumably the agency kind of looks at these things as precedent and tries to be consistent. That's correct. So, you know, sending a message to your Facebook friends is basically inviting the public to share a ride? Well, two things. One is just I do think that the interpretation here relied heavily on the McPherson interpretation and essentially incorporated it by reference, and I know that that interpretation does refer to the Habercorn interpretation. But with respect to the Facebook audience question, I think in the Habercorn interpretation, what the agency concluded was that the holding out question with respect to a Facebook posting would depend on the circumstances presented. Obviously, people use Facebook in lots of different ways. Some people only have a very limited number of friends. In those circumstances, there would be no holding out. Some people have a lot of Facebook friends, and then those, you know, might have a- Exactly. So that was the point of the Habercorn interpretation. The request for the interpretation there didn't offer any details as to kind of the nature of the Facebook postings at issue there, so the agency wasn't able to make a determination based on the facts that were presented and just noted that it would depend on, you know, various factors. So how does the agency define public? Because FlightNow says that, well, the only people who will see this are the people who join the site and become members. And so in that sense, no one, you know, it's not just that everyone Googling can see this information. It's only people who join the site. So how is that opening itself up to the public? Well, Your Honor, any member of the public at large can easily join the FlightNow website. I think we've heard that there's no barrier other than simply applying for membership. A person from the public at large can do a Google search for, you know, what flight services are available to me. They might find the FlightNow website, and then they can apply for membership and have access to all of those flights. That's very different from all the circumstances in which the agency has concluded that there is no holding out. So if somebody has Facebook and anybody who sends them a friend request, they say, yes, you can be my Facebook friend. That would be impermissible. But if they, you know, limited themselves to only 10 friends at a time or 50 friends at a time, then they wouldn't be holding out to the public. I'm trying to understand what the rationale is here. Yeah, and let me answer the question. But I'd also like to know that I don't think that this is an argument that the petitioners have made. I don't think they made it in the proceedings before the agency. And so I think kind of this line of kind of argument is barred. This court is barred from considering it under 49 U.S.C. 46110D. And I also think that it's not something that they're pressing before this court. But to answer your question, I think the agency's position is that it is a context-specific kind of analysis. There may be some cases where it's a close call, whether something is public or not. And the Facebook example is one where, you know, there are definitely going to be easy cases, like where someone has only 10 friends. There are going to be easy cases at the other end of the spectrum where, you know, a person has tens of thousands of friends and is basically effectively a public website that folks can come to. There are going to be harder cases in the middle of this case, though it doesn't present kind of any of those harder questions, because what we have here is a website that any member of the public can have access to. It's designed to hook members of the public at large up with pilots who want to share expenses. That's the very purpose of the website. If this is not holding out to the public, it is kind of hard to imagine what's not. Can we back up and just identify for me what you think is the statutory authority for this interpretation and the regulatory basis for the holding out requirement? So the statutory authority for the decision that was said? The statutory authority for the limitation that you're placing on flight now, the holding out limitation. Sure. So the statute defines air carrier to mean, essentially, someone who's engaged in common carriage in the interstate, foreign, and so forth context, and we have that in the definitional provision 49 U.S.C. 40102A is where we get the common carriage requirement. And what's the best evidence that, for your position, that common carrier is not meant to reflect the common law definition? I don't think we're actually saying it's not meant to reflect the common law definition. I think, actually, like the circuit held in Woolsey, that the agency's definition of common carriage is actually the same as the common law definition, and I don't think there is actually any distinction. But the elements that the agency relies upon in the advisory circular, holding out that there's compensation and that there's carriage of persons from place to place, those are the elements, I think, that are also reflected in common law. So I don't think we have, actually, a case where there's some discrepancy between the two and that we need to choose between the two. Specifically in common law, the question arises whether an unquestioned common carrier violated its obligations to carry, non-discriminatory and so on. This is a peculiar variation on that, where the question is whether it's a common carrier based on whether it's holding out. Are there any cases like that in common law? I don't know about common law cases, Your Honor. There are certainly cases that courts have addressed in the aviation context, which is what we have presented here, the Woolsey case, and that the circuit is a good example where the court was presented with a question of whether or not the petitioner in that case was holding out or whether, instead, that person was engaged in private carriage. So there are examples of this, and certainly these cases come up all the time in these requests for legal interpretations that the FAA considers, and time after time the agency is considering whether or not the holding out requirement has been satisfied. I'd like to just respond to that. Can I ask a question related to that? If common carrier is a term that's defined by the common law, then why are you entitled to any deference at all in how to interpret that term since the agency didn't come up with the definition? I think we're not claiming that we are entitled to Chevron deference, and we actually don't think Chevron deference principles are at issue here. The arguments that the petitioner made in their opening brief were arguments premised on errors that the petitioner said the agency made with respect to interpretations of its own regulations, and so for those interpretations we think our deference is applicable. The petitioner before the agency and also in the opening brief didn't seem to be making any arguments attacking the agency's interpretation of the statute of the term common carrier kind of as that term is found in the statute, and so we just don't think that questions of Chevron deference are even at issue. Well, let's suppose we think that the case turns on whether your interpretation of common carrier is correct. So do you agree then that there's no deference owed to the agency with respect to that question? In this particular case, we're not asking for Chevron deference with respect to kind of the interpretation of the term common carriage in the statute. That is correct. Or the way you understand holding out? The way we understand holding out, again, I think we have to look at sort of how the petitioners frame their arguments. The attacks that the petitioner has made on their argument with respect to the agency's decisions are really attacks based on kind of the agency's understanding of its own regulations. In the opening brief, the only attack that the petitioner made with respect to the holding out conclusion that the agency reached here was that it said, oh, holding out isn't even applicable here, repeating that argument that we heard again this morning, that we don't even get to the holding out inquiry because 119.1 says that Part 119 only applies to those who are subject to it, and then I think petitioner's theory is that Section 119.5K somehow represents the codification of the holding out inquiry, which I think as we explained in our brief, that's not correct. The only argument that the petitioner made in the opening brief was that we misinterpreted the Part 119 regulations to conclude that holding out and that under those regulations there is no need to engage in a holding out inquiry. But I think as Your Honors pointed out, there is a need to do that inquiry because when we're trying to figure out whether or not Part 119 applies, Part 119 has been, we have to look to see whether or not someone is a common carrier and that requires an analysis of whether that person is holding out. And wouldn't it matter under common law not just what the companies says they're doing and the pilots say they're doing, but what they actually do? And this gets back to Judge Wilkins' question about it's very difficult for us to look at this kind of issue with so little factual context. That's right. And I do think that when courts are evaluating the holding out inquiry, looking at whether someone is opening up their services to the public indiscriminately, there is an inquiry into kind of how things work on the ground, and the Fifth Circuit explained that in the Woolsey decision. This court explained a similar principle in the National Association of Regulatory Commissioners decision, which is in the FCC context, but basically pointed out that kind of what really matters is how things work on the ground. Here, based on the submission that the agency received from FlightNow, the agency reasonably concluded that there was holding out to the public because these flights are posted on the website that are accessible to any member of the public who simply applies for a membership. We have no reason to think that pilots who post their flights on this website are going to routinely reject these requests. The entire point of their posting on this website is to obtain passengers from the public at large for their flights. And they're not operating now, as far as we know? I don't know exactly. I mean, certainly not in the record. I think they do have a website. This is obviously out of the record, but they do have a website that's still up. I don't know if the operations are continuing or not. Well, if the website, the way that it works, is that any member of the public can join, but they can't just kind of go surfing to see who's flying where. They have to put in, okay, I want to go to Boston on November the 1st. Are there any pilots going to Boston on November the 1st? And it comes back and says, yeah, there's one. And then they inquire whether they can join that pilot on the trip. In that sense, you would say that that's still holding out because it was indiscriminate as far as, you know, this person being able to join the site? We would say it's holding out because that flight was made available to the public at large through this website. In some ways, what you're describing isn't that much different from the process that I would go through if I wanted to reserve a seat on United Airlines to go on a flight to Boston. I would simply go to their website. I would say I want to leave on November 1st. I would see what's available, and then I would submit my request to fly on the plane. I would get a ticket. Here, it's all the same until that very last step, whereas for me, I buy my ticket. The FlightNow passenger drawn from the public at large, you know, submits a request to the FlightNow pilot. We have no reason to think that FlightNow pilots are going to be routinely rejecting these requests. The entire point of the FlightNow website is so that pilots can draw passengers from the public at large to fill seats on their planes, thereby defraying some of their costs and promoting their economic interests and so forth. If we were to vacate and remand, you would have to wait for an actual enforcement action to develop a record? Is that your position? Is there any process by which the record could be further developed in this pre-enforcement context? If you were to vacate and remand, certainly the agency would be willing to accept new submissions from the petitioner if they want to provide more facts. That would be true even if we didn't. I'm sorry, what's that? I thought you said earlier that would be true even if we didn't remand. That's exactly right. They could do that right now. That's exactly right. I mean, at bottom, the agency receives these requests for interpretations on a regular basis. It responds based on the facts that are presented to it. Sometimes those facts aren't very well-developed here. Perhaps they could have been developed better. But the agency took the facts that were presented to them, answered the question based on those facts, and we submit that the answer the agency gave was reasonable. And I'd like to note that the agency's answer is fully consistent with its prior decisions of its Office of Chief Counsel, which have, contrary to the submissions by the Petitioner's Counsel, addressed similar nationwide initiatives like this, not on the Internet, but through kind of more traditional means of communication, and have held that those nationwide initiatives are not permitted and constitute common carriage. And I'm talking about the Brown, the Clay, and the Chiro interpretations. So this is entirely consistent with those prior decisions. Thank you. So, Mr. Riches, your time has expired, but we'll give you a couple of minutes. Thank you. Thank you. Judge Wilkins and Judge Ginsburg, you both asked about whether there was enough relevant facts to reach the dispositive issues here. We certainly think that there were. There were two separate letters, including one by a former FAA administrator, submitted to the FAA that laid out all of the relevant facts that the court needs to know about how FlightNow operates. Who's the former administrator? McPherson. That would be the Rebecca McPherson request in the McPherson interpretation. She was representing AirPooler? That's correct, Your Honor. So a new interpretation, even if FlightNow could go back and ask for a new interpretation, Your Honor, that would get us nowhere because the facts, the relevant facts, aren't changing. Do we know why AirPooler isn't in this case with you? They're in a very parallel position. Yes, Your Honor. It's a very similar business plan. But they're not coming to us with this issue. Do we know, are they taking a different route to try to pursue their business plan? I don't know if they're pursuing legislative remedies or not. What I do know, of course, is that FlightNow has chosen to challenge the agency actions they have a right to do. So we think that it would be unreasonable to demand of FlightNow that they go back to the agency to present facts that they very clearly presented in a very detailed letter, and I would report to review all the facts. Well, in your submission to the agency and here, you say, well, the pilots have the ability to decline to take any particular passenger. If you were in a position to say, to have a track record and say, well, here's what's happening, they have declined some passengers. That may be impossible because you may have been stopped from operating too early for that. But that is exactly how the Walsey case was determined, right? The carrier, or the alleged common carrier, claimed that it was not holding itself out to the public and it retained its discretion. The record of its conduct showed that it never turned anyone down, and that was influential in the Fifth Circuit. Sure, Your Honor, but that would require an enforcement action against the pilot, and I think to this point— No, not necessarily. If you had a track record in which you could substantiate that pilots actually do turn people down, you'd be on a different foot. What we do have, Your Honor, is the terms of service from FlightNow, which is included in the record, and those very, very clearly lay out for both pilots and passengers that flights can be refused for any reason or no reason at all. And that's the operative question, one of the operative questions under the common law. That's the operative question, in fact, under the FAA's own definition of holding out, which we don't think that we need to reach. The FAA requires that it be indiscriminate and to be holding out, but this quite clearly is discriminant. Thank you. Just a few seconds. We're really over time. Just briefly, Your Honor, the court, I think, and you asked it, Judge Pillard, where is the statutory justification for the FAA to take this action? The statutory justification is in airline safety, and what they have done here does not advance airline safety. All of these pilots are certified, and the means that they've chosen, this 119 requirement, has nothing to do with safety. It has to do with a commercial enterprise. Thank you, Mr. Rich. Thank you. Before the next case, we're going to take just a short break of five minutes.
judges: Pillard, Wilkins, Ginsburg